IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUSTIN BUILDING & DESIGN, INC., | |
| Plaintiff, | **8:21–CV–471** |
| vs. | |
| NELSON ENGINEERING CONSTRUCTION, INC., an Iowa corporation, | **MEMORANDUM AND ORDER ON APPLICATION OF THE *COLORADO RIVER* DOCTRINE** |
| Defendant. | |

This matter initially came before the Court on a Motion to Dismiss for lack of subject-matter jurisdiction filed by defendant Nelson Engineering Construction, Inc. (Nelson). Filing 23 at 1. Nelson argued at the time that this Court lacked jurisdiction pursuant to the *Rooker-Feldman* doctrine. Filing 23 at 1. Plaintiff Austin Building & Design, Inc. (Austin), opposed the Motion, Filing 31 at 1, and the Court ultimately agreed with Austin that *Rooker-Feldman* did not apply to this case because that doctrine's timing requirement was not satisfied. *See* Filing 34 at 14. However, the Court directed the parties to brief whether the *Colorado River* doctrine nonetheless counseled against the exercise of jurisdiction. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); Filing 34 at 15. The parties have now done so. Nelson argues that the *Colorado River* doctrine militates against the exercise of federal jurisdiction while Austin argues the opposite. *See* Filing 37; Filing 38; *see also* Filing 39-2; Filing 42. Having considered the parties' briefs, supplemental briefs, relevant portions of the record, and the governing law, the Court concludes that the *Colorado River* doctrine counsels against the exercise of federal jurisdiction under the circumstances presented in this case. Therefore, the Court will dismiss Austin's Petition, Filing 1, without prejudice. This resolution necessarily moots Austin's Motion for Summary Judgement, Filing 24, as well.

1

# I.   BACKGROUND[1]

The underlying dispute at issue in this case "arises from a contract between Austin and Ingredion Incorporated ('Ingredion') for the conversion and construction of a pea protein production facility in South Sioux City, Nebraska[.]" Filing 1 at 1 (¶1); Filing 14 at 1 (¶1).[2] "Austin entered into two subcontracts with Nelson for work on [this] [p]roject." Filing 1 at 1 (¶2); Filing 14 at 1 (¶2). Both subcontracts between Austin and Nelson included arbitration provisions. Filing 1 at 2 (¶5); Filing 14 at 1 (¶5). A series of litigation followed thereafter. *See generally* Filing 1 at 1–3 (¶¶1–9); Filing 14 at 1 (¶¶1–9); Filing 39-1.

## A.   Austin's Initiation of State Court Case CI No. 20-91

On or about April 8, 2020, Austin initiated suit against Ingredion in Nebraska state court. Filing 23-2 at 1, 3. The case was filed in the District Court for Dakota County Nebraska and was captioned CI No. 20-91. Filing 23-2 at 1; Filing 23-1 at 1; Filing 31 at 2. Austin later filed an Amended Complaint against Ingredion in CI No. 20-91 on June 11, 2020. Filing 23-2. The Amended Complaint alleged the following seven counts against Ingredion: breach of contract, unjust enrichment, promissory estoppel, fraudulent misrepresentation, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and a violation of Nebraska's Deceptive Trade Practices Act. *See* Filing 23-2 at 30–37. On April 12, 2021, Nelson moved to intervene in CI No. 20-91. Filing 23-2 at 42. Along with its Motion to Intervene, Nelson submitted a "Complaint in Intervention" wherein it alleged two counts. Filing 23-2 at 46–47. The

---

[1] Many of the facts set forth below were originally included in this Court's prior ruling concerning application of the *Rooker-Feldman* doctrine. *See* Filing 34 at 2–5. Because these facts are relevant to the present matter, the Court repeats most of them in this Order for ease of reference.

[2] Ingredion is not a party to the suit that is presently before this Court but is a party to concurrent litigation involving Austin in Nebraska state court. *See* Filing 1 at 2 (¶4); Filing 14 at 1 (¶4).

first count alleged a breach of contract claim against Austin. Filing 23-2 at 45. The second count

alleged a *quantum meruit* claim against Ingredion. Filing 23-2 at 46.

Austin filed an objection to Nelson's Motion to Intervene on April 21, 2021. Filing 23-2 at

49. In its objection, Austin argued that "the subcontracts entered into between Austin and Nelson

contain arbitration provisions which provide that any disputes between Austin and Nelson must be

resolved exclusively through arbitration." Filing 23-2 at 50. Over Austin's objection, the Nebraska

state court granted Nelson's Motion to Intervene on May 7, 2021. Filing 23-2 at 61–62. In so

doing, the Nebraska state court recognized that the "main question" was "whether the dispute

between Nelson and Austin is bound by the arbitration clause in the subcontract." Filing 23-2 at

60. Relying on Nebraska Supreme Court precedent, the court concluded that the arbitration clauses

in the subcontracts conflicted with language in the primary contract. Filing 23-2 at 61. Therefore,

because the court found that the primary contract controlled, it determined that Nelson was not

bound by the arbitration clauses and granted Nelson's Motion to Intervene. Filing 23-2 at 61–62.

However, on or about August 23, 2021, the Nebraska state court granted a joint motion to "dismiss

Nelson's complaint in intervention without prejudice, permit a withdrawal of Nelson's motion to

intervene, and vacate [its intervention order] dated May 7, 2021." Filing 23-2 at 63–64.

### B.  Nelson's Initiation of State Court Case CI No. 21-277 and Austin's Later Initiation of this Case in Federal Court

Thereafter, "[o]n or about October 7, 2021, Nelson filed a Complaint against Austin,

Ingredion[,] and Sioux City Foundry Company in Nebraska State court[.]" Filing 1 at 3 (¶6); Filing

14 at 1 (¶6). The case was filed in the District Court for Dakota County, Nebraska, and was

captioned CI No. 21-277. Filing 1 at 3 (¶6); Filing 14 at 1 (¶6). Nelson's state court complaint in

CI No. 21-277 alleges two counts: (1) an action to foreclose a construction lien, and (2) an action

in *quantum meruit*. Filing 31-1 at 64–65. Austin is named as a defendant in the action to foreclose

the lien, but not the *quantum meruit* claim. Filing 31-1 at 64–65. Nelson's state court complaint alleges as fact "that Austin failed to pay Nelson $2,565,142.91 owed to Nelson under the terms of the subcontracts[.]" Filing 1 at 5 (¶21); Filing 14 at 2 (¶21). However, Nelson did not bring a breach of contract action against Austin in CI No. 21-277. *See* Filing 31-1 at 64–65.

On December 20, 2021, a little over two months after Nelson initiated CI No. 21-277 in Nebraska state court, Austin filed suit in this Court against Nelson. *See generally* Filing 1. Austin styled this action as a "Petition Under Section 4 of the Federal Arbitration Act to Compel Arbitration." Filing 1 at 1. According to Austin's "Petition," the claims Nelson asserted in state court "fall within the scope of the subcontract arbitration clauses, which require any and all claims by Nelson related to payment of money for its work on the [p]roject to be resolved solely and exclusively through arbitration" meaning that "Nelson brought the Complaint in [CI No. 21-277] in contravention of the arbitration clauses in both subcontracts." *See* Filing 1 at 6–7 (¶¶30–31). When Nelson answered Austin's Petition before this Court on March 21, 2022, it denied that its state court Complaint filed in CI No. 21-277 contravened the subcontract arbitration clauses. *See* Filing 14 at 3 (¶¶30–31). Specifically, Nelson said that its Complaint did "not involve a 'Claim' as defined . . . [by the subcontracts] entered into between Nelson and Austin. Therefore, Nelson [wa]s not bound by any Arbitration Provision contained in the [subcontracts]." Filing 14 at 3 (¶31).

Meanwhile, on the same day Austin filed its Petition in this Court, it also filed a motion to stay CI No. 21-277 in Nebraska state court. Filing 23-2 at 78. In this motion, Austin noted that it had filed suit in federal court and argued that the state court should stay its proceedings in CI No. 21-277 "pending the determination by the Nebraska Federal District Court under the Federal Arbitration Act about whether the claims Nelson brings here must be arbitrated." Filing 23-2 at 83. Nelson opposed this motion to stay on January 27, 2022. Filing 23-2 at 85. It supported its

position by emphasizing that the state court had previously determined that Nelson was not bound by the subcontracts' arbitration provisions in its May 7, 2021, order in CI No. 20-91. Filing 23-2 at 89. After considering the parties' positions on Austin's motion to stay CI No. 21-277, the state court issued a written ruling on April 1, 2022. Filing 23-2 at 98.

The state court noted that once again, "[t]he main question here, as in CI 20-91, continues to be whether the dispute between the parties is bound by the arbitration clause in the subcontract between Nelson and Austin." Filing 23-2 at 99. It then concluded that "[w]hile the Order in CI 20-91 may have been mooted by Nelson's withdrawal in that matter, the [state court], having reviewed this matter and the argument of the parties, comes to the same conclusion that the prime contract controls here." Filing 23-2 at 99. The state court declined to grant a stay and again concluded that the "the arbitration clause included in the subcontract between Nelson and Austin does not prevent Nelson from seeking recourse under the Nebraska Construction Lien Act[.]" Filing 23-2 at 101. Thus, Nelson prevailed on the arbitrability issue in state court after the lawsuit in this Court was filed but before this Court made any determination on the matter. *See* Filing 23-2 at 99–101.

### C. Austin's Appeal before the Nebraska Court of Appeals

Austin appealed this ruling to the Nebraska Court of Appeals. *See*  Filing 31 at 4 (noting the appeal is captioned "Nebraska Court of Appeals, Case No. A 22-000319"); Filing 39-2 at 4. Three issues were presented in this appeal: (1) whether the state court erred in "denying Austin's motion to stay pending the resolution of the petition to compel arbitration before the federal court"; (2) whether the state court erred in "basing its decision regarding Austin's motion to stay on an improper resolution of an issue not before it by failing to consider the appropriate factors for determining the issue"; and (3) whether the state court erred in "finding that the contract between Austin and Nelson does not contain an enforceable arbitration agreement." *Nelson Eng'g Constr., Inc. v. Austin Bldg. & Design Inc.,* No. A-22-319, 2023 WL 3185507, at *2 (Neb. Ct. App. May

2, 2023). The Nebraska Court of Appeals heard oral argument on April 12, 2023—one day before Austin submitted its brief to this Court regarding the *Colorado River* doctrine. *See* Filing 38 at 9. It decided the case on May 2, 2023. *See Nelson Eng'g Constr., Inc.*, 2023 WL 3185507, at *1.[3] As the Nebraska Court of Appeals recounted in its opinion, the state trial court "denied Austin's motion to stay, and in its order addressed the merits of the arbitrability issue pending before the federal court." *Id.* Although that court ultimately dismissed the appeal for lack of jurisdiction because the state trial court's order was not a final order, *see id.* at *4, it also noted the following:

> When the district court denied Austin's motion to stay, *it also reached the merits of the arbitrability issue pending before the federal court*, concluding that the arbitration provisions of the subcontract did not apply and that there was no reason to stay the action. Austin asserts that the district court's order is therefore substantively similar to the denial of a motion to compel arbitration.

*Nelson Eng'g Constr., Inc.*, 2023 WL 3185507, at *2 (emphasis added).

The Nebraska Court of Appeals went on to "recognize that the [state] district court order addressed the arbitrability of Nelson's claims against Austin," even though "there was not a motion to compel arbitration filed in the [state] district court." *Id.* at *3. The Nebraska Court of Appeals also noted that, "While the district court purportedly reached the merits of the arbitrability issue, the fact remains that Austin did not file a motion to compel arbitration before the [state] district court." *Id.* at *4. It therefore reasoned,

> Because Austin's motion to stay did not invoke a specific statutory remedy that is neither an action nor a step in an action, and because Austin did not file a motion to compel arbitration before the [state] district court, the order here was not a final order in an action that effectively determined the actions and prevents a judgment under [Neb. Rev. Stat.] § 25–1902.

*Nelson Eng'g Constr., Inc.*, 2023 WL 3185507, at *4.

---

[3] Austin filed a copy of this opinion with the Court for its consideration on May 8, 2023. Filing 39; Filing 39-1; Filing 39-2. This Court takes judicial notice of the state court opinion and the matters at issue in that appeal. *Donner v. Alcoa, Inc.*, 709 F.3d 694, 698 (8th Cir. 2013) (citing other Eighth Circuit cases for the proposition that "[F]ederal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue").

Given this determination, the Nebraska Court of Appeals concluded that it lacked jurisdiction to consider the merits of the appeal and expressly declined to weigh in on "whether the [state] district court erred in addressing the enforcement of the arbitration clause in the subcontract between Austin and Nelson." *Id.*

## II.  LEGAL ANALYSIS

### A.  The Parties' Arguments

Nelson argues "that this Court should decline to exercise jurisdiction over this matter under the *Colorado River* doctrine and Austin's complaint should be dismissed." Filing 37 at 3. In support of its position, Nelson principally asserts that state and federal court actions are parallel and the balance of factors weigh in favor of abstention. *See* Filing 37 at 8–9. Nelson requests that this Court dismiss the action, or—in the alternative—stay this suit until the state case is resolved. Austin counters by primarily attacking whether the state and federal action are "parallel." *See* Filing 38 at 1, 3–5; Filing 39-1 at 1–2. However, to the extent they are parallel, Austin insists that there are no exceptional circumstances justifying abstention under this doctrine. Filing 38 at 5.

### B.  Applicable Standards

"In *Colorado River*, the Supreme Court held that, in certain circumstances, a federal court may dismiss a properly filed federal action in favor of a parallel state-court action." *Myer v. Americo Life, Inc.*, 469 F.3d 731, 732 n.4 (8th Cir. 2006). However, "a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention." *Fru-Con Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2013) (quoting *Colorado River*, 424 U.S. at 817–18); accord *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013). The doctrine "is based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1121 (8th

Cir. 2015) (quoting *Colorado River*, 424 U.S. at 817). In considering whether to abstain under this doctrine, federal courts conduct a two-part test. *See Cottrell*, 737 F.3d at 1245. The first part of the test asks whether the federal action and the state action are "parallel." *Id.* If they are not, then abstention is unwarranted and no further inquiry is necessary. *Id.* at 1245 n.7. If they are "parallel," however, a court then turns to the second part of the test which involves a balancing of factors to determine whether "exceptional circumstances warrant abstention." *Id.* at 1245; *Spectra*, 806 F.3d at 1121. District courts are entitled to discretion in deciding whether to abstain from exercising jurisdiction pursuant to the *Colorado River* doctrine. *Spectra*, 806 F.3d at 1120.

As for the first part of the analysis, "to be parallel, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell*, 737 F.3d at 1245 (internal quotation marks omitted). "To determine whether parallel proceedings exist, [the Eighth Circuit has] compared the 'sources of law, required evidentiary showings, measures of damages, and treatment on appeal' for each claim." *Id.* (citation omitted). Moreover, "[i]n determining whether the state and federal proceedings are parallel, a district court is to consider the proceedings as they presently exist, not when they were originally filed." *Nabholz Const. Corp. v. Beck*, 699 F.Supp.2d 1101, 1105–1105-06 (E.D. Mo. 2010) (citing *Fru-Con*, 574 F.3d at 540–45 (Bye, J., concurring in the result and joining the dissent in part and Shephard J., dissenting)); *see also Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017) (explaining the relevant point in time to determine parallelism is "at the time the federal court is deciding whether to abstain").[4]

---

[4] The Eighth Circuit's *Fru-Con* decision resulted in divergent opinions regarding the relevant point in time when an action should be assessed for parallelism. *See Advocat Inc. v. Blanchard*, No. 4:11CV00895 JLH, 2012 WL 1893735, at *1 (E.D. Ark. May 24, 2012) (explaining the Eighth Circuit's holding in light of the panel's different

With respect to the second half of the analysis, "[s]ix non-exhaustive factors have been developed to determine whether, in the case of parallel state and federal proceedings, exceptional circumstances warrant abstention." *Fru-Con*, 574 F.3d at 534.

> These six factors are: (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Fru-Con*, 574 F.3d at 534 (citation omitted).

These factors derive from the United States Supreme Court's decision in *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983). As the Supreme Court explained in that case, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* These factors are weighted, "'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Spectra*, 806 F.3d at 1121 (quoting *Moses H. Cone*, 460 U.S. at 16). The Eighth Circuit has also said that additional factors may be entitled to consideration in the analysis as well. *See e.g.*, *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*, 48 F.3d 294, 299 (8th Cir. 1995) (noting "an additional aspect of this analysis not specifically included as a factor: whether the federal or state suit is filed as for a vexatious, reactive or tactical reason" and then concluding that because one the party's hands "were soiled during its forum-shopping spree, we

---

views). "Judges Bye and Shepherd held that the district court must determine whether the state court action and the federal action are parallel proceedings as they actually existed when the district court abstained." *Id.* (internal quotation marks and citation omitted). *See also Republic Bank of Chicago v. Lighthouse Mgmt. Grp., Inc.*, 829 F. Supp. 2d 766, 775 (D. Minn. 2010) (noting that a party misread *Fru-Con* by relying on Judge Beam's opinion).

are disinclined to view its request for abstention as anything more than a continuation of its forum selection strategy"). Other courts have concluded that like considerations are also relevant to the analysis, such as "whether the party opposing abstention has engaged in impermissible forum-shopping." *See e.g.*, *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (citing *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990)).

### C. Discussion

#### 1.  *The State and Federal Actions Are Parallel*

The threshold question this Court must answer is whether the state action and the federal action are parallel—*i.e.*, is there "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell*, 737 F.3d at 1245 (internal quotation marks and citation omitted). The only issue Austin raised in its Petition before this Court is whether Nelson can continue to pursue its claims in state court or whether it must arbitrate those claims. *See* Filing 1 at 6–7. If there is a "substantial likelihood" that the Nebraska state court action "will fully dispose" of Austin's federal attempt to compel arbitration, then the two actions are "parallel." *See* *Cottrell*, 737 F.3d at 1245. However, if "any doubt exists as to the parallel nature of concurrent state and federal proceedings, [this Court] cannot utilize *Colorado River* to refuse its jurisdiction." *Id.* The Court concludes there can be no doubt that the state and federal court cases are "parallel" for purposes of the *Colorado River* doctrine because "there is a substantial likelihood that the state proceeding will fully dispose of the claim[] presented in" this Court. *Cottrell*, 737 F.3d at 1245.

The state court ruled over a year ago "that the arbitration clause included in the subcontract between Nelson and [Austin] does not prevent Nelson from seeking recourse under the Nebraska Construction Lien Act[.]" Filing 31-1 at 107. As the Nebraska Court of Appeals later put it, "When the district court denied Austin's motion to stay, it also reached the merits of the arbitrability issue pending before the federal court[.]" *Nelson Eng'g Constr. Inc.*, 2023 WL 3185507, at *2. This is

significant because the only state court claim that implicates Austin in CI No. 21-277 is brought pursuant to the Nebraska Construction Lien Act. *See* Filing 31-1 at 64–65. Therefore, the state trial court already disposed of the only issue that Austin asks this Court to decide—whether Austin wanted that court to decide it or not. The actions are parallel for purposes of the *Colorado River* doctrine. *See Gavilon Grain, LLC v. K & A Sealy Farms*, No. 2:19CV00058, 2019 WL 13212727, at *2 (E.D. Ark. Oct. 2, 2019) ("It appears undisputed that parallel proceedings exist. The claim asserted here, that the farm defendants' disputes with Gavilon Grain must be submitted to arbitration[,] are also before the State Court").

Austin's argument to the contrary ignores the nature of the state court claims that have been brought by Nelson. As the state trial court noted in its ruling, Austin was named as a co-defendant based on the fact it too had a construction lien against Ingredion. Filing 31-1 at 104. Naming Austin as a co-defendant in CI No. 21-277 was consistent with the Nebraska Construction Lien Act, which provides: "In a proceeding to foreclose a lien, all claimants having recorded liens may join as plaintiffs and those who do not join as plaintiffs may be joined as defendants." Neb. Rev. Stat. § 52-155.[5] Although Nelson's state court complaint might allege as a matter of "fact" that "Austin failed and refused and still fails and refuses to pay [Nelson] for the amounts due under the contracts" in an amount equal to $2,565,142.91, Filing 31-1 at 63–64, this assertion of "fact" does not mean that Nelson is pursuing a separate legal claim against Austin in CI No. 21-277 (*e.g.*,

---

[5] Nelson has consistently argued before both this Court and the state court that it has not brought any claims against Austin in the state court case. *See e.g.*, Filing 37 at 2; Filing 31-1 at 86. Nelson's position before the state court is that Austin had been named in the case "solely as a lienholder because [Austin] has also filed a construction lien against the subject property." Filing 31-1 at 84; *see also* Filing 31-1 at 64 (Nelson's state court complaint asserting as fact that "Austin may claim some lien or interest in the Property by virtue of a Construction Lien in the amount of $29,754,265.00 filed for record on May 8, 2020, at 1:00 p.m., as Instrument No. 20-047584 in the office of the Dakota County Register of Deeds").

breach of contract)—even if Nelson potentially could have.[6] Nelson's decision to limit itself to one type of claim even when it may have been able to bring an additional claim was a "strategic, legal choice . . . well within [its] discretion as the master of its complaint." *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 683–84 (8th Cir. 2002).

When the state trial court concluded "that the arbitration clause included in the subcontract between Nelson and [Austin] does not prevent Nelson from seeking recourse under the Nebraska Construction Lien Act," Filing 31-1 at 107, it fully disposed of the arbitrability issue. Because the foreclosure action under the Nebraska Construction Lien Act is the only claim Nelson brought in its state court complaint that involved Austin—and even then only because of Austin's status as a fellow lienholder against Ingredion—the state court has already disposed of the exact same issue that Austin asks this Court to decide. Whether the state trial court's ruling was a final, appealable order such that the Nebraska Court of Appeals had jurisdiction to consider an appeal pursuant to a specific state statute is a separate matter. This Court's concern is whether there is a "substantial likelihood" that the state court will fully dispose of the same arbitrability issue that has been presented to this Court. *Cottrell*, 737 F.3d at 1245. Because the state trial court already determined the merits of this issue and given that parallelism is determined at the time when the district court is determining whether to abstain, this Court concludes that the state and federal actions are parallel. *See Fru-Con*, 574 F.3d at 540–45 (Bye, J., concurring in the result and joining the dissent in part and Shephard J., dissenting); *Kelly*, 868 F.3d at 285; *Nabholz Const. Corp.*, 699 F.Supp.2d at 1105-06; *Republic Bank of Chicago*, 829 F. Supp. 2d at 775.

---

[6] Nebraska law permits plaintiffs to bring breach of contract claims either simultaneously with or separately from foreclosure actions under the Nebraska Construction Lien Act. *See Preston Refrigeration Co. v. Omaha Cold Storage Terminals, Inc.*, 742 N.W.2d 782, 788 (Neb. Ct. App. 2007) (citing *Tilt-Up Concrete, Inc. v. Star City/Fed., Inc.*, 621 N.W.2d 502, 507–08 (Neb. 2001).

The Court's conclusion is also consistent with the Western District of Missouri's decision in *Time Warner Cable Inc. v. Cooper-Dorsey,* No. 19-00151-CV-W-ODS, 2019 WL 2552220, at *1 (W.D. Mo. June 20, 2019). Like the case before this Court, *Cooper-Dorsey* also involved one party filing suit in state court followed by the opposing party filing a petition in federal court to compel arbitration of the claims that had been asserted in state court. *See id.* at *1–*2. In determining that the state and federal actions were parallel, the district court reasoned:

> The claim submitted by Time Warner in this Court – to wit, that Cooper-Dorsey's claims arising from her employment with Time Warner must be arbitrated – was also asserted by Time Warner in the state court as a motion to compel arbitration. As set forth above, the state court already resolved that issue, denying Time Warner's request to compel arbitration. The fact that the state court fully disposed of the claim that Time Warner asks the Court to resolve in this lawsuit demonstrates a substantial similarity between the state and federal proceedings. Accordingly, the state and federal proceedings are parallel.

*Cooper-Dorsey,* 2019 WL 2552220, at *3 (internal parenthetical citation omitted)

As in *Cooper-Dorsey*, the state trial court has already resolved the arbitration issue Austin asserts. *Id.* The Nebraska Court of Appeals' opinion makes this abundantly clear. *See Nelson Eng'g Constr., Inc.*, 2023 WL 3185507, at *1–4. Indeed, the opinion reflects that when Austin was arguing before the Nebraska Court of Appeals, it "assert[ed] that the [state] district court's order is . . . substantively similar to the denial of a motion to compel arbitration" and further posited "that the [state] district court's order affected a substantial right in determining that Austin was not entitled to arbitrate its dispute with Nelson." *Id.* at *2–3. Thus, Austin acknowledged before the Nebraska Court of Appeals that the state trial court determined the merits of the arbitrability issue. Whether the state trial court "should" have reached the merits is irrelevant to this analysis. What matters is that the state trial court "did" reach the merits of the arbitrability issue—a point the Nebraska Court of Appeals repeatedly noted throughout its opinion. See id. at *1–4. Moreover, in dismissing Austin's appeal for lack of jurisdiction, the Nebraska Court of Appeals left the state

trial court order fully intact and undisturbed. "The fact that the state [trial] court fully disposed of the claim that [Austin] asks the Court to resolve in this lawsuit demonstrates a substantial similarity between the state and federal proceedings." *Cooper-Dorsey*, 2019 WL 2552220, at *3. Therefore, this Court concludes "the state and federal proceedings are parallel." *Id.*[7]

    *2.  Exceptional Circumstances Warrant Abstention*

    Having concluded that the actions are parallel, the Court now turns to the second half of the *Colorado River* analysis. *See Cottrell*, 737 F.3d at 1245 n.8. This requires the Court to analyze six factors and then weigh them "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Spectra*, 806 F.3d at 1121 (quoting *Moses H. Cone*, 460 U.S. at 21). After doing so, the Court will then address whether any additional considerations further buttress the Court's abstention decision. *See e.g.*, *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299.

    a.  The First Factor is Neutral

    The first factor is "whether there is a res over which one court has established jurisdiction[.]" *Fru-Con*, 574 F.3d at 534. The underlying dispute at issue in this case may involve property, but the focus of this analysis is the issue of arbitrability. While this factor is not directly applicable to the present case, that is hardly dispositive. *See e.g.*, *Spectra*, 806 F.3d at 1121 (noting that this factor was "irrelevant" to that particular case and ultimately concluding that abstention was appropriate). This factor neither favors nor disfavors abstention—it is neutral.

---

[7] In supplemental filings it submitted on May 8, 2023, Austin argues that the Nebraska Court of Appeals' decision actually supports its position. *See* Filing 39 at 2; Filing 39-1 at 1–3. Specifically, Austin says that "[b]ecause there is no motion to compel arbitration pending in state court to resolve the issues presented in this Court, the state and federal proceedings are not parallel, and *Colorado River* abstention is improper without the required parallelity." Filing 39-1 at 2 (internal citation omitted and italics added). The Court is not persuaded. The key point is that the state court already decided the issue. Austin's position before this Court is also undermined by what it asserted before the Nebraska Court of Appeals. Before that court, Austin asserted that the state trial court's order was "substantially similar to the denial of a motion to compel arbitration." *Nelson Eng'g Constr., Inc.*, 2023 WL 3185507, at *3.

b.   The Second Factor Marginally Weighs in Favor of Abstention

The second factor considers "the inconvenience of the federal forum[.]" *Fru-Con*, 574 F.3d at 534. Nelson contends that this factor weighs in favor of abstention given that "the Dakota County courthouse [where the state action was filed] is no more than a couple of miles from the location of the" situs giving rise to the state court action, and "Nelson's principal place of business is in South Sioux City, Dakota County, Nebraska." Filing 37 at 4–5. Austin counters that Nelson is a national general contractor that performs projects throughout the United States, that this Court is in the jurisdiction where Nelson is headquartered, and that Nelson's counsel is licensed in this Court. Filing 38 at 7. The geographic proximity between the Dakota County Courthouse, Nelson, and the situs giving rise to the state court action tends to favor abstention, but it does so only marginally. The federal forum is not so inconvenient that this factor significantly sways the analysis either way. While this factor might barely favor abstention, it is not particularly weighty.

c.   The Third Factor Weighs Very Strongly in Favor of Abstention

The third factor—which asks whether maintaining separate actions may result in piecemeal litigation, *Fru-Con*, 574 F.3d at 534—weighs heavily against allowing this action to continue in federal court. Although "[t]he weight to be given to any one factor may vary greatly from case to case," it is worth noting that this third factor was "[b]y far the most important factor" in the Supreme Court's *Colorado River* decision. *See Moses H. Cone*, 460 U.S. at 16; *see also Spectra*, 806 F.3d at 1121 ("The third factor, the risk of piecemeal litigation, is the 'predominant factor' and is a significant concern here"). The Court finds that this third factor is also very weighty under the circumstances presented in this case. Simply put, if both the state and federal cases "were permitted to go forward, two courts would be adjudicating the same legal issue—the classic piecemeal litigation situation." *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 396 (6th Cir. 2019). Moreover, "the state court action resolved the arbitration question while that

15

issue remains undecided in this Court. For this additional reason, the risk of piecemeal litigation weighs in favor of abstention." *Cooper-Dorsey*, 2019 WL 2552220, at *4.

Weighing in on the issue of arbitrability at this stage would be imprudent. If this Court were to agree with the state trial court's ruling on the arbitration issue this entire federal action will have been unnecessary. Such redundancy is hardly consistent with the "conservation of judicial resources"—one of the key considerations upon which the *Colorado River* doctrine is premised. *See Colorado River*, 424 U.S. at 817; *see also Spectra*, 806 F.3d at 1121. However, if the Court were to disagree with the state trial court's ruling and conclude that it is appropriate to compel arbitration, the parties would then be left to navigate how to proceed with two directly conflicting orders from two different courts. The possibility that this Court might reach a conclusion contrary to that of the state trial court "could cause unwarranted friction between state and federal courts, a result which is obviously undesirable and avoidable in this instance." *Spectra*, 806 F.3d at 1121 (internal quotation marks omitted). Furthermore, in considering this third factor, the Eighth Circuit has noted that its "cases have advanced the policies underlying *Colorado River* by favoring the most complete action." *Spectra*, 806 F.3d at 1122 (brackets and internal quotation marks omitted). In *Spectra*, the court concluded that "the state court action [was] more complete because it include[d] all the parties and claims" and that this consideration favored abstention. *Id.* The same is true of this case. The only parties to the federal suit are Nelson and Austin. *See generally* Filing 1. By contrast, the state suit involves another claim and other parties in addition to Nelson and Austin. For all of the foregoing reasons, this "predominant factor" weighs heavily in favor of abstention. *Spectra*, 806 F.3d at 1121.

### d.   The Fourth Factor Also Weighs Heavily in Favor of Abstention

The fourth factor questions "which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases[.]" *Fru-Con*, 574 F.3d at

534. This factor also strongly favors abstention, and—like the third factor—is entitled to considerable weight when viewing "the realities of the case at hand." *Spectra*, 806 F.3d at 1121; *Moses H. Cone*, 460 U.S. at 16 (noting that the "weight to be given to any one factor" will depend "on the particular setting of the case"). Here, "the state litigation is more advanced because the state court has addressed the merits" of whether Nelson's claims are subject to arbitration, while this Court has yet to touch the merits of that issue. *See Spectra*, 806 F.3d at 1122. Although the Nebraska Court of Appeals ultimately dismissed Austin's appeal for want of jurisdiction, that only underscores the progress that has been made on this issue in the state court system relative to the progress that has been made on this issue in the federal court system. The state trial court ruled on this issue and, after an unsuccessful appeal by Austin, that ruling remains in effect. Thus, the merits of the issue have clearly progressed much further in the state court system. Nelson's deadline for briefing the merits of the issue in this Court has not even expired.[8] *See VanArsdale*, 676 F. App'x at 396 (reasoning the progress of the respective suits weighed in favor of abstention because "the state court has already granted summary judgment on the issue of enforceability [of arbitration], and that decision is now under consideration by the state intermediate court").

The Eighth Circuit's decision in *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920 (8th Cir. 2006), is also instructive. In *Mountain Pure*, the court reiterated that in assessing which case has "priority" over the other, it is appropriate to focus on "how much progress has been made in the two actions." *Id.* at 927 (quoting *Moses H. Cone*, 460 U.S. at 21). The court then noted that neither the state court nor the federal court had yet to address the merits of some of the claims at issue in that case. *Id.* at 927. It therefore reasoned that because the state court case and the federal

---

[8] *See* Filing 32 (Text Order) (granting Nelson's request to submit its brief in opposition to Austin's Motion for Summary Judgment within 21 days following the Court's jurisdiction ruling); Filing 34 at 16 (further extending Nelson's deadline to file an opposition brief to Austin's Motion for Summary Judgment pending the Court's determination as to whether it is appropriate to abstain).

court case stood "on relatively equal footing" at least as to one class of claims, this factor did "not support finding exceptional circumstances sufficient to justify the district court's refusal to exercise jurisdiction." *Id.* The present case stands in stark contrast with *Mountain Pure* because the state court has ruled on the issue of arbitrability and that ruling has thus far survived an appeal. *See VanArsdale*, 676 F. App'x at 395. Accordingly, this factor weighs firmly in favor of abstention.

        e.   The Fifth Factor is Largely Neutral

The fifth factor concerns "whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls[.]" *Fru-Con*, 574 F.3d at 534. On the one hand, the fact that Austin seeks to compel arbitration on the basis of the FAA presents an issue that "will inevitably involve federal law to at least some degree." *VanArsdale*, 676 F. App'x at 391. The FAA does not bestow any federal jurisdiction, *Hursh v. DST Sys., Inc.*, 54 F.4th 561, 563 (8th Cir. 2022), but "[w]here a transaction falls within the scope of the FAA, the substantive issue of whether the motion to compel arbitration should be granted is a question of federal law." *Cullinane v. Beverly Enterprises-Nebraska, Inc.*, 912 N.W.2d 774, 790 (2018). At the same time, "[s]tate contract law governs whether an arbitration agreement is valid[,]" *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001), and in order for this Court to determine "whether to compel arbitration" it "must first consider whether a valid agreement to arbitrate exists" before "then consider[ing] the scope of the agreement." *United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005).[9]

At bottom, this factor does not weigh firmly in favor or against abstention. The Eighth Circuit has recognized that even when this factor weighs against abstention, that by no means

---

[9] In the state case, the trial court concluded that "the language in the subcontract is contrary to the prime contract, and the prime contract contains language binding parties entering a subcontract, therefore . . . the language of the prime contract controls." Filing 31-1 at 106. Based on this interpretation of Nebraska contract law, the state court concluded that the prime contract—"which does not include an arbitration clause"—controls. *See* Filing 31-1 at 105.

makes it dispositive. *See e.g.*, *Spectra*, 806 F.3d at 1122 ("We acknowledge that the fifth factor weighs against abstention . . . Nevertheless, no one factor is necessarily determinative in assessing whether abstention is appropriate") (cleaned up). In *Spectra*, the Eighth Circuit concluded that even though the fifth factor did not support abstention, it did not warrant reversal of the district court's decision to abstain on the basis of the *Colorado River* doctrine. *Id.* In reaching this determination, the *Spectra* court reasoned that this was "particularly" appropriate, because "the state court [could] resolve all of [the] federal claims." *Id.* The same is true here. The state court is quite capable of handling and resolving the very same arbitration issue that has been brought before this Court. Austin readily concedes this in its brief. *See* Filing 38 at 8 ("As for the adequacy of the state court to protect the federal plaintiff's rights, Austin does not dispute that a state court can consider motions to compel arbitration under the FAA").

Ultimately, when the Court considers this factor "in a pragmatic, flexible manner with a view to the realities of the case at hand[,]" *Spectra*, 806 F.3d at 1121, it is not especially weighty—at least not compared to some of the other factors that are present. *See also VanArsdale*, 676 F. App'x at 396 (noting that "neither state nor federal law clearly predominates in this case" and, therefore, [w]ith the sources of the relevant law necessarily being mixed, then, this factor neither favors nor disfavors abstention"). While the Court agrees that the intersecting nature of federal and state law renders this factor largely neutral to the analysis, even if it weighed against abstention it does so only barely.

### f.   The Sixth Factor is Also Neutral

The sixth factor involves "the adequacy of the state forum to protect the federal plaintiff's rights." *Fru-Con*, 574 F.3d at 534. "Austin does not dispute that a state court can consider motions to compel arbitration under the FAA." Filing 38 at 8. Nor does Austin suggest that the state court would be in inadequate forum to protect its rights under the FAA. *See id.* At the same time, this

consideration is largely neutral because "this factor counts for or against abstention and dismissal only where 'one of the forums is inadequate to protect a party's rights.'" *Fru-Con*, 574 F.3d at 539 (quoting *Gov't Employees Ins. Co. v. Simon*, 917 F.2d 1144, 1149 (8th Cir. 1990) (in turn quoting *Noonan S.*, *Inc. v. County of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988)) (emphasis in original).

g.   The Balance of Factors Weighs Firmly in Favor of Abstention

All told, when these factors are afforded the weight they are respectively entitled to and then balanced accordingly, the *Colorado River* doctrine cautions against the exercise of federal jurisdiction in this case. When weighing the factors, "in a pragmatic, flexible manner with a view to the realities of the case at hand[,]" *Spectra*, 806 F.3d at 1121, the Court finds that the third and fourth factors carry the most weight. Special emphasis on the third factor—the avoidance of piecemeal litigation—is consistent with the Eighth Circuit's recognition of the third factor's "predominant" nature in past cases. *See e.g.*, *id.* The fourth factor—which considers which case has priority and has progressed further is also entitled to significant consideration under the circumstances presented in this case. The state court case has progressed much farther than the federal court case on the issue or arbitrability because it has yet to be fully briefed before this Court. Considered in tandem, the third and fourth factors strongly militate against the exercise of federal jurisdiction. For the reasons explained above, the remaining factors are less weighty under the circumstances presented here. The first factor is neutral. The second factor weighs in favor of abstention, but just barely so. The fifth and sixth factors do not weigh for or against the exercise of jurisdiction. When appropriate consideration is given to the third and fourth factors, the Court is convinced that the "[f]ailure to abstain and defer to the state court's concurrent jurisdiction would result in the same issues being litigated almost simultaneously in two separate courts and would be a tremendous waste of the judiciary's limited resources." *Simmons v. Mill's Pride, Inc.*, 788 F. Supp. 1072, 1075 (W.D. Mo. 1992) (citing *Colorado River*, 424 U.S. at 817).

h.   Additional Considerations Also Support Abstention

As previously noted, the Eighth Circuit—as well as other federal circuit courts—have noted additional factors may also be relevant to the analysis. *See Cooper-Dorsey, 2019* WL 2552220, at *6 ("The six factors identified in *Colorado River* are non-exhaustive, and courts have considered other factors when determining whether to abstain. The Eighth Circuit has considered forum shopping and 'whether the federal or state suit is filed for a vexatious, reactive or tactical reason'") (quoting *Federated Rural Elec. In. So.,* 48 F.3d at 299)). It is apparent that Austin had tactical reasons to file suit in this Court while simultaneously seeking a stay in state court. The state court previously ruled against Austin on the issue of arbitrability in CI No. 20-91 before Nelson voluntarily withdrew from that case and initiated CI No. 21-277. *See* Filing 31-1 at 105. Austin undoubtedly knew what was likely to occur once Nelson initiated CI No. 21-277 in the same court and that case was assigned to the same state court judge. *See* Filing 31-1 at 92, 107.

"Several courts have considered whether a later filed federal lawsuit is an attempt to forum shop or avoid adverse rulings by the state court. When such practices are utilized by a party, several federal courts have found this factor weighs strongly in favor of abstention." *Cooper-Dorsey*, 2019 WL 2552220, at *6; *see also Seneca Ins. Co., Inc. v. Strange Land, Inc*., 862 F.3d 835, 846 (9th Cir. 2017) ("When evaluating forum shopping under *Colorado River*, we consider whether either party improperly sought more favorable rules in its choice of forum *or pursued suit in a new forum after facing setbacks in the original proceeding*") (emphasis added); *accord United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1206 (9th Cir. 2021). In *Cooper-Dorsey*, for example, the district court acknowledged that a party had "a right to file suit in federal court seeking an order compelling arbitration." 2019 WL 2552220, at *7. However, the plaintiff "did not exercise its right until more than four months after [the opposing party] initiated the state court action, and more significantly, it exercised its right weeks after it received an adverse ruling from the state court on

its motion to compel arbitration and appealed the state court's decision." *Id.* The district court concluded that the timing of the federal lawsuit "indicate[d] this matter was, at a minimum, reactive." *Id.* Because the party seeking to compel arbitration in that case was "seek[ing] the same relief it sought and was denied in the state court" the federal action appeared to be an "effort to avoid the state court's adverse ruling." *Id.* The district court therefore found that "the additional factors weigh in favor of abstention." *Id.*

Austin already lost on the issue of arbitrability the first time this issue was litigated in a prior case. Filing 31-1 at 91–92. When Nelson withdrew from that case and initiated a new state court action involving Austin once again, Austin asked this Court to do exactly what the state court previously refused to do. Not only that, but Austin also asked that the state court stay its proceedings until this Court ruled on the issue of arbitration. The Court has little reason to doubt that Austin's decision to compel arbitration by filing suit in this Court was an effort to avoid an inevitable adverse ruling if the state court were to weigh in on it once again. Thus, this additional consideration weighs in favor of abstention. The balance of factors already compelled that determination; this additional consideration reinforces that conclusion.

### 3. Dismissal Without Prejudice is Appropriate

The only question that remains is how the Court should effectuate its abstention. *See Simmons*, 788 F. Supp. at 1076 (observing that "[i]n *Moses H. Cone,* the Supreme Court declined to decide 'whether a dismissal or a stay should ordinarily be the preferred course of action' when a district court decides to abstain from exercising its jurisdiction, other than to say "that a stay is as much a refusal to exercise federal jurisdiction as a dismissal'") (citation omitted). Austin does not weigh in on whether a stay would be more appropriate than dismissal. *See generally* Filing 38. Having considered both options, the Court will follow the path the court took in *Cooper-Dorsey* and dismiss the matter without prejudice. *See Cooper-Dorsey*, 2019 WL 2552220, at *8; *see also*

*Spectra*, 806 F.3d at 1122 (concluding that the district court did not abuse its discretion when it dismissed the plaintiff's case after determining abstention was warranted); *Darsie v. Avia Grp. Int'l*, 36 F.3d 743, 746 (8th Cir. 1994) (concluding "the district court did not abuse its discretion in dismissing the complaint pursuant to the 'exceptional circumstances' test of *Colorado River* as expanded by the Supreme Court in *Cone*").

Like *Cooper-Dorsey*, "there are several reasons why dismissal, instead of a stay, is appropriate in this matter." *Cooper-Dorsey*, 2019 WL 2552220, at *7. First, "the state court will be a more than adequate vehicle for the complete and prompt resolution of the parties' disputes." *Id.* Second, the Court sees no reason why this matter would return to federal court given the state court's ability to resolve it. *See id.*; *see also Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 875 n.2 (8th Cir. 2000) (noting that because "the state trial court ha[d] rendered its decision" the Eighth Circuit saw "no reason for the case to return to federal court" and "dismissal rather than a stay [was] appropriate"). Third, "the Court does not envision . . . a situation where the state court fails to resolve the controversy, risking a potential time bar." *Cooper-Dorsey*, 2019 WL 2552220, at *7. Even if the state court reached the wrong conclusion, Austin can pursue recourse through the state appellate court system at the appropriate juncture. "Fourth, because [Austin] seeks only injunctive relief and does not seek damages . . . the Court retains the authority to dismiss the matter." *Id.* These four considerations warrant dismissal without prejudice rather than the issuance of a stay. Furthermore, issuing a stay would leave Austin's Motion for Summary Judgment, Filing 24, pending for an indeterminate amount of time. Rather than allow this matter to linger unnecessarily while the state action continues, the more prudent course of action is to dismiss the matter without prejudice.

### III.    CONCLUSION

For the foregoing reasons, the Court will abstain in this case consistent with the *Colorado River* doctrine under the fact-specific circumstances presented here. Accordingly,

IT IS ORDERED:

1. Austin's Petition, Filing 1, is dismissed without prejudice;

2. Austin's Motion for Summary Judgment, Filing 24, is denied as moot; and

3. This case is terminated.

Dated this 23rd day of May, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge